Christian J. JANSEN, Jr.,
Plaintiff–Appellant,

v.

REXALL SUNDOWN, INC.,
Defendant–Appellee.

No. 03–1069.

United States Court of Appeals,
Federal Circuit.

Sept. 8, 2003.

John C. McNett, Woodard, Emhardt, Naughton, Moriarty & McNett, of Indianapolis, IN, argued for plaintiff-appellant. With him on the brief was Steve E. Zlatos.

Gary H. Levin, Woodcock Washburn LLP, of Philadelphia, PA, argued for defendant-appellee. With him on the brief was Lynn B. Morreale.

Before LOURIE, RADER and SCHALL, Circuit Judges.

LOURIE, Circuit Judge.

Christian J. Jansen, Jr., appeals from the final decision of the United States District Court for the Southern District of Indiana granting summary judgment that Rexall Sundown, Inc. has not infringed Jansen's U.S. Patent 4,945,083. *Jansen v. Rexall Sundown, Inc.*, No. IP–00–1495–C–T/G, 2002 WL 31427511 (S.D.Ind. Sept.25, 2002). Because the court correctly construed the patent claims and correctly found no genuine issues of material fact on the question of infringement, we affirm.

## BACKGROUND

Jansen is the sole inventor and owner of the '083 patent, which is directed to methods of "treating or preventing macrocytic-megaloblastic anemia" by administering a combination of folic acid and vitamin $B_{12}$ "to a human in need thereof." '083 patent, col. 6, ll. 20–24, ll. 37–41. According to the patent, deficiencies of either folic acid or vitamin $B_{12}$ can cause macrocytic-megaloblastic anemia, also referred to as pernicious anemia, while a deficiency of vitamin $B_{12}$ can also cause neurological problems. *Id.* at col. 4, ll. 13–25. When folic acid alone is utilized to treat macrocytic-megaloblastic anemia, the folic acid may mask a vitamin $B_{12}$ deficiency. *Id.; see also id.* at col. 3, l. 65—col. 4, l. 5. An objective of Jansen's invention is to administer both supplements together to avoid the masking problem. Id. at col. 4, ll. 25–48. The independent claims read as follows:

1. A method of *treating or preventing macrocytic-megaloblastic anemia* in humans which anemia is caused by either folic acid deficiency or by vitamin $B_{12}$ deficiency which comprises administering a daily oral dosage of a vitamin preparation *to a human in need thereof* comprising at least about 0.5 mg. of vitamin $B_{12}$ and at least about 0.5 mg. of folic acid.

4. A method of *treating or preventing macrocytic-magaloblastic [sic] anemia* in humans which anemia is caused by either folic acid deficiency or by vitamin $B_{12}$ deficiency which comprises orally administering combined vitamin $B_{12}$ and folic acid *to a human in need thereof* in sufficient amounts to achieve an oral administration of at least about 0.5 mg. of vitamin $B_{12}$ and at least about 0.5 mg. of folic acid within one day.

*Id.* at col. 6, ll. 20–24, ll. 37–41 (emphases added).

The '083 patent is a seventh-generation continuation of a patent application filed in 1970. Every member of the '083 patent's lineage was abandoned in favor of the succeeding application until the '083 patent issued in 1990. Jansen's first application claimed the method as follows:

A method of treating or preventing anemia in humans which comprises administering a daily oral dosage of a vitamin preparation containing at least .5 mg. of vitamin $B_{12}$ and at least .5 mg. of folic acid, whereby anemia can safely be treated orally without determining whether it is caused by folic acid deficiency or by vitamin $B_{12}$ deficiency.

*In re Jansen*, 525 F.2d 1059, 187 USPQ 743, 744 (CCPA 1975). That original claim, while specifying approximately the same amounts of folic acid and vitamin $B_{12}$, does not specify the type of anemia being treated and says nothing about any need on the part of the human subject. The

U.S. Patent and Trademark Office ("PTO") found that claim, as well as claims directed to the composition of matter, to be obvious in light of prior art that taught administration of folic acid alone in the claimed range, vitamin $B_{12}$ alone in the claimed range, and combinations of the two in smaller doses than claimed. The PTO found unpersuasive Jansen's argument that administration of both components in the higher, claimed doses was an unexpected solution to the masking problem, and the Court of Customs and Patent Appeals affirmed the PTO's rejections. *Id.* at 746, 525 F.2d 1059. In his next five applications, Jansen persistently attempted to gain allowance of his claims in slightly different form, yet the PTO consistently rejected his attempts. In the prosecution of his seventh application, Jansen repeated his masking-avoidance argument and submitted an article that asserted that the medical community had come to realize the effectiveness of folic acid-vitamin $B_{12}$ combination therapy to treat pernicious anemia only after Jansen's invention date. *See* William H. Crosby, *Improvisation Revisited—Oral Cyanocobalamin Without Intrinsic Factor for Pernicious Anemia,* 140 Arch. Intern. Med. 1582 (1980). The examiner agreed but noted that the claims, being directed to unspecified anemia, were not commensurate in scope with Jansen's showing of unexpected results. Jansen thereafter agreed to cancel his composition of matter claims and to narrow his method claims by requiring a specific type of anemia, *viz.,* macrocytic-megaloblastic anemia, rather than anemia generally, and by adding to the claims the phrase "to a human in need thereof." The PTO then issued the '083 patent to Jansen.

Rexall markets to the general public an over-the-counter dietary supplement presently known as Folic Acid XTRA ® that contains folic acid and vitamin $B_{12}$ within the claimed ranges. The Rexall product is labeled and advertised for maintenance of proper blood homocysteine levels, but not for prevention or treatment of macrocytic-megaloblastic anemia.

Jansen sued Rexall for inducement of and contributory infringement of the '083 patent. In the district court Jansen argued that all people are "human[s] in need" of "treat[ment] or prevent[ion] of macrocytic-megaloblastic anemia," but the court, without definitively construing the "in need" phrase, rejected that argument. *Jansen,* slip op. at 14. Citing, *inter alia, Rapoport v. Dement,* 254 F.3d 1053 (Fed. Cir.2001), the court then construed the phrase "treating or preventing macrocytic-megaloblastic anemia" to require that, in order to infringe the patent, the human subject of the claimed method take the compound with the intent of treating or preventing macrocytic-megaloblastic anemia. *Jansen,* slip op. at 16. Because the court found no evidence of such intent or purpose on the part of Rexall's customers, the court granted summary judgment of noninfringement. *Id.* at 16–17.

Jansen timely appealed to this court, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We review a district court's grant of a motion for summary judgment *de novo. Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.,* 149 F.3d 1309, 1315 (Fed.Cir.1998).

A determination of patent infringement requires a two-step analysis. "First, the court determines the scope and meaning of the patent claims asserted ... [Second,] the properly construed claims are compared to the allegedly infringing device." *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed.Cir.1998) (en banc) (citations omitted). Step one, claim construction, is an issue of law, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), that we review *de novo*, *Cybor*, 138 F.3d at 1456. Step two, comparison of the claim to the accused device, requires a determination that every claim limitation or its equivalent is found in the accused device. *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Those determinations are questions of fact. *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed.Cir.1998).

On appeal, Jansen first argues that the court improperly construed the claims. More specifically, he contends that the court's construction improperly added to the claims an intent element, which is contrary to law as well as contrary to the ordinary meaning of the claim language, which does not suggest that the infringer's state of mind is relevant. Nor does the '083 patent's prosecution history, according to Jansen, suggest that the infringer's state of mind is relevant. He also argues that *Rapoport* does not support the court's view that a direct infringer must purposefully perform the claimed method, and that in any event *Rapoport* is distinguishable because that case, unlike this case, did not involve a claim to a method of prevention of a disease. According to Jansen, the phrase "a human in need thereof" encompasses a person who does not know that his or her serum levels of folic acid and vitamin $B_{12}$ are adequate. Jansen secondly argues that he presented sufficient evidence of infringement to avoid summary judgment. According to Jansen, Rexall's formulation and labeling are circumstantial evidence of direct infringement by Rexall's customers.

Rexall responds that the court's claim construction does not add an intent element to the claims except as required by the particular language of the claims themselves. Rexall also contends that, just as in *Rapoport*, the claims in the '083 patent should be interpreted to require that the target group ("human[s] in need thereof") practice the method for the stated purpose ("treating or preventing macrocytic-megaloblastic anemia"), especially where, as here, the prosecution history reveals that both limitations were added for patentability. According to Rexall, a "human in need thereof" is someone either suffering from macrocytic-megaloblastic anemia or at a recognized risk, such as by medical diagnosis, of developing that condition. Rexall also responds that there is no evidence that it markets its product to the target group for the claimed purpose; on the contrary, it contends that it markets its product only for regulation of blood homocysteine levels. Rexall further contends that, even if there were some evidence of direct infringement by its customers, it is not liable for indirect infringement, for it has not intended to cause infringement and there are substantial noninfringing uses of its product, thereby negating inducement of and contributory infringement.

We begin our claim construction, as always, with the ordinary meaning of the claim language. *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1341 (Fed.Cir. 2001). That language requires that the method be performed on "a human in need thereof" and that the method be used "for treating or preventing macrocytic-megaloblastic anemia." The parties do not dis-

pute what "macrocytic-megaloblastic anemia" means; instead, they dispute how the "treating or preventing" phrase and the "to a human in need thereof" phrase should be read. The issue reduces to whether such a human must know that he is in need of either treatment or prevention of that condition.

A similar issue arose in *Rapoport*, an interference proceeding before the PTO's Board of Patent Appeals and Interferences. The count in that case read as follows:

A method *for treatment of sleep apneas* comprising administration of a therapeutically effective amount of a Formula I azapirone compound or a pharmaceutically effective acid addition salt thereof *to a patient in need of such treatment* . . . .

254 F.3d at 1056 (emphases added). On appeal we gave weight to the ordinary meaning of the preamble phrase "for treatment of sleep apneas," interpreting it to refer to sleep apnea, *per se*, not just "symptoms associated with sleep apnea." *Id.* at 1059. Rapoport argued that the count was unpatentable on the ground that a prior art reference disclosed that a form of the compound recited in the claim could be administered, not for treatment of sleep apnea itself, but for treatment of anxiety and breathing difficulty, a symptom of apnea. *Id.* at 1061. We rejected that argument, stating, "There is no disclosure in the [prior art reference that the compound] is administered to patients suffering from sleep apnea *with the intent to cure the underlying condition.*" *Id.* (emphasis added). Thus, the claim was interpreted to require that the method be practiced with the intent to achieve the objective stated in the preamble.

Just as in *Rapoport*, it is natural to interpret the nearly parallel language in the '083 patent claims in the same way. In both *Rapoport* and this case, the claim

preamble sets forth the objective of the method, and the body of the claim directs that the method be performed on someone "in need." In both cases, the claims' recitation of a patient or a human "in need" gives life and meaning to the preambles' statement of purpose. *See Kropa v. Robie,* 38 C.C.P.A. 858, 187 F.2d 150, 152 (CCPA 1951) (stating the rule that a preamble is treated as a limitation if it gives "life and meaning" to the claim). The preamble is therefore not merely a statement of effect that may or may not be desired or appreciated. Rather, it is a statement of the intentional purpose for which the method must be performed. We need not decide whether we would reach the same conclusion if either of the "treating or preventing" phrase or the "to a human in need thereof" phrase was not a part of the claim; together, however, they compel the claim construction arrived at by both the district court and this court.

■ Our conclusion as to the meaning of the claims is bolstered by an analysis of the prosecution history. The prosecution history is often useful to ascertain the meaning of the claim language. Indeed, claims are not construed in a vacuum, but rather in the context of the intrinsic evidence, *viz.*, the other claims, the specification, and the prosecution history. *See De-Marini Sports, Inc. v. Worth, Inc.,* 239 F.3d 1314, 1327 (Fed.Cir.2001). In this case, the "treating or preventing macrocytic-megaloblastic anemia" phrase and the "to a human in need thereof" phrase were added to gain allowance of the claims after almost twenty years of repeatedly unsuccessful attempts to gain allowance of claims without those phrases. We must therefore give them weight, for the patentability of the claims hinged upon their presence in the claim language. *See Smith v. Magic City Kennel Club, Inc.,* 282 U.S. 784, 790, 51 S.Ct. 291, 75 L.Ed.

707 (1931) ("The applicant[,] having limited his claim by amendment and accepted a patent, brings himself within the rules that if the claim to a combination be restricted to specified elements, all must be regarded as material, and that limitations imposed by the inventor, especially such as were introduced into an application after it had been persistently rejected, must be strictly construed against the inventor and looked upon as disclaimers."). Furthermore, because both phrases were added simultaneously to overcome the same rejection, they should be read together, meaning that the word "thereof" in the phrase "to a human in need thereof" should be construed to refer to the treatment or prevention of macrocytic-megaloblastic anemia. Finally, that "need" must be recognized and appreciated, for otherwise the added phrases do not carry the meaning that the circumstances of their addition suggest that they carry. In other words, administering the claimed vitamins in the claimed doses for some purpose other than treating or preventing macrocytic-megaloblastic anemia is not practicing the claimed method, because Jansen limited his claims to treatment or prevention of that particular condition in those who need such treatment or prevention. Thus, the '083 patent claims are properly interpreted to mean that the combination of folic acid and vitamin $B_{12}$ must be administered to a human with a recognized need to treat or prevent macrocytic-megaloblastic anemia.

■ Given that claim construction, we turn to the issue whether Jansen has raised a genuine issue of material fact regarding infringement. We conclude that he has not. Jansen has asserted indirect infringement by Rexall, premised on direct infringement by Rexall's customers. *See Met–Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed.Cir.1986) ("Absent direct infringement of the patent claims, there can be neither contributory infringement nor inducement of infringe-

ment." (citations omitted)). Jansen's theory of infringement is primarily based upon his construction of the claim that those who do not affirmatively know that they do not need to take steps to prevent or treat macrocytic-megaloblastic anemia are still "in need thereof." As explained above, that claim construction is incorrect. Jansen nonetheless asserts that he has circumstantial evidence of direct infringement by Rexall's customers under the claim construction we and the district court have adopted. Specifically, he contends that Rexall's formulation, having folic acid and vitamin $B_{12}$ in such large quantities as his claims call for, as well as Rexall's labeling stating that "[i]t is especially important to take B–12 along with Folic acid because Folic acid can mask a B–12 deficiency," are evidence that some customers do knowingly take the Rexall product to treat or prevent macrocytic-megaloblastic anemia.

While Jansen is correct that it is theoretically possible that some of Rexall's customers do take the Rexall product knowingly to treat or prevent macrocytic-megaloblastic anemia, and therefore directly infringe his patent, his evidence is quite weak. In fact, he has shown no more than a theoretical possibility or "metaphysical doubt," which is insufficient to create a *genuine* issue of material fact. *See Anderson*, 477 U.S. at 261, 106 S.Ct. 2505 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The district court's decision that there were no genuine issues of material fact on the question of infringement was therefore correct.

Use of an over-the-counter product like Rexall's is quite different from the use of a product pursuant to a prescription from a medical doctor. In the latter case, a prescription is evidence of a diagnosis and a

knowing need to use the product for the stated purpose. Jansen does not have evidence of that in this case. Rexall's product is provided with a label stating that the product can be used for maintenance of blood homocysteine levels, and purchasers do not necessarily know that they are in need of preventing or treating macrocytic-megaloblastic anemia. Instead, Jansen has only conjecture that some purchasers of the Rexall product might meet the claim requirements. The district court therefore did not err in holding that he failed to present sufficient proof of infringement to create a genuine issue of material fact and to thereby avoid summary judgment of noninfringement.

## CONCLUSION

The district court correctly construed the claims of the '083 patent and properly determined that Jansen did not present sufficient evidence to create a genuine issue of material fact relating to infringement by Rexall. Accordingly, we

*AFFIRM.*