Dyk, Circuit Judge,
dissenting-in-part.
Like the majority, I see the ultimate issue here as a matter of claim construction under the broadest reasonable interpretation standard. Maj. Op. 981-82. I agree with the majority with respect to the construction of the device claims, but I respectfully disagree as to the method claims.
I
Claims 24, 25, and 31 are device claims. Independent claim 24, representative of these device claims, provides for “a diverting unit configured to divert a message” and a “controlling entity ... configured to control ... whether the application program behaves in a predetermined manner in the communication terminal.” ’923 patent, col. 10 1. 62-col. 11 1. 3 (emphases added). The plain language of claim 24 indicates that there is a separate “diverting unit” which “divert[s] a message” to the controlling entity. This reading is reinforced by the specification, which teaches that
the invention provides a terminal for a communication system. The terminal includes one or more applications configured to send messages' towards a communication network and , diverting means for .diverting selected messages sent from an application and destined for the communication network to a controlling entity residing in the terminal, where the controlling entity is configured to control the selected messages before it is to be transmitted to the communication network.
Id. at col. 2 11. 23-31 (emphases added). Thus, I agree with the majority that “the only reasonable construction of the claim language, in light of the specification,' is that claim 24 assumes separate structures for the ‘diverting unit’ and the ‘controlling entity.’ ” Maj. Op. 983.
Claims 1, 2, 4, 5 and 8 are method claims, but their language is different. Independent claim 1, representative of these method claims, provides:
A method for controlling application programs in a communication terminal, the method comprising:
sending messages from an application program towards a communication network, the application program residing in a communication terminal;
diverting a message of the messages to a controlling entity residing in the communication terminal) and
based on the message, controlling in the controlling entity whether the application program behaves in a predetermined manner in the communication terminal, the controlling- being performed before the message is transmitted from the communication terminal to the communication network.
’923 patent, col. 9 11. 10-22 (emphasis added).
*987 Thus, the device claims and the method claims do not use the same claim terms. The device claims recite a “diverting unit.” In contrast, the method claims merely recite the step of “diverting a. message.” Even the majority opinion acknowledges this distinction, holding that “claim 1 makes no mention of a ‘diverting unit.’” Maj. Op. 984.
This significant difference in claim language contradicts the Board’s rationale that the method claims require a separate diverting unit, such “that the diverting step is performed by something other than the controlling entity.” J.A. 9. The plain meaning of “divert” is “to turn from one course, direction, objective, or use to another.” Webster’s Third New International Dictionary 663 (2002), In the context of Claim l’s language — “diverting a message of the messages to a controlling entity”— the verb “divert” is acting on the noun “message,” which was on its way to the network, but is now “tum[ed] from [that] course, direction ... to another,” namely, to the controlling entity. From this plain meaning of the “diverting” step, I see nothing that confines what is doing the diverting. Indeed, even the majority concedes that “we see no reason that a ‘controlling entity’ cannot ‘divert’ a message to itself,” Maj. Op. 984, and that the language of “claim 24 ... is on its face more informative than the language of claim 1,” because “separation is [in] the claim language itself,” Maj, Op. at 982. Under the broadest reasonable interpretation, therefore, claim 1 cannot be read to require a separate diverting unit or component that performs the diverting.
The specification also does not support the Board’s construction of the method claims. The specification discusses these method claims in only one relevant passage:
[O]ne embodiment of the invention is the provision of a method for controlling applications in a communication terminal. The method includes the steps of sending messages from an application towards a communication network, .,. and diverting at least one message destined for the communication network to a controlling entity residing in the communication terminal. The method also includes controlling, in the controlling entity, the at least one message diverted to it before being transmitted from the communication terminal to the communication network.
’923 patent, col. 2 11. 11-22 (emphasis added). There is no suggestion from this passage that the diverting “step” requires a separate component. Therefore, I believe the Board erred in concluding that “[t]he specification of the ’923 patent confirms that the diverting and controlling steps of claim 1 are performed by separate components.” J.A. 9 (emphasis added). In fact, all of the disclosures that the Board cites that correspond to a separate diverting unit pertain only to the device claims. See J.A. 9-10 (citing to embodiments described in figures 2 and 6-8); ’923 patent, col. 3 11. 10-11, 20-23 (figures 2 and 6-8 are device embodiments).
Finally, I disagree that the inventive purpose behind the ’923 patent suggests a different construction of the method claims, The inventive concept here is only to “efficiently control[ ] the behavior of applications residing in a terminal ... [using] a separate controlling entity.” ’923 patent, col, 1 11, 54-60. This purpose can be met without requiring a separate diverting component. The Board erred in elevating a secondary purpose of the patent to all of the claims. That purpose is having “[t]he controlling entity reside[ ] in a tamper resistant area[,] ... so that its operation cannot be affected by the user or other parties that are beyond the control of the *988 network operator.” ’923 patent, col. 2 11. 3-6; Maj. Op. 979-80. This secondary purpose is the subject of dependent claim 26, which is not on appeal and not part of the IPR petition. Claim 26 provides a “terminal according to [device] claim 24, wherein the controlling entity is configured to reside in a tamper resistant area of the terminal.” ’923 patent, col. 11 11. 10-12. Thus, Figures 2, 6, 7, and 8 of the specification, which have a separate diverting unit outside of the tamper resistant area where the controlling entity resides, ’923 patent, col. 2 1. 59, col. 5 1. 33, col. 5 1. 58, relate only to dependent claim 26.
In summary, to read the method claims as requiring a separate diverting entity would not be “interpreting] [the claims] as broadly as their terms reasonably allow” under the proper broadest reasonable interpretation standard. In re Zletz, 893 F.2d 319, 321 (Fed. Cir. 1989). The Board thus erred in its construction of the method claims.
II
The majority does not reach the question of whether the device claims and the method claims should be construed differently. The majority holds that all of the claims must be construed in the same way because “HTC has forfeited any argument ... that the two [sets of] claims could support different conclusions regarding whether two structures are required for the diverting and controlling functions.” Maj. Op. 983. In the majority’s view, because “HTC never presented a developed explanation for why the Board could distinguish between those [sets of] claims with respect to the separate-components requirement,” this court should “not consider giving claim 1 ... a different scope from that of claim 24.” Maj. Op. 983. In my view, the majority’s forfeiture holding is both incorrect and troubling for future cases.
This is not a_ situation in which the appellant had failed to argue separately the method and the device claims. HTC had consistently presented separate arguments with respect to the method claims and the device claims throughout the proceedings. See, e.g., J.A. 569-77; Appellant Br. 22-38.[1] For example, in its IPR petition to the Board, HTC presented a detailed claim chart and specific disclosures found in the Calder and Richardson prior-art references that, in its view, made each limitation obvious for each claim at issue; in particular, HTC presented a different set of disclosures found in the prior art with respect to claim l’s diverting limitation than to claim 24’s diverting limitation. Compare Petition for Inter Partes Review at 47, IPR2014-01133 (P.T.A.B. July 10, 2014), Paper No. 1, with id. at 51. In another example, in the Petitioner’s Reply to the Board, HTC argued that “CCE’s statement that ... D’Aviera does not disclose anything . .•. that could perform the intervening diverting step is misguided. The language of claim 1 does not preclude the same structure from performing the diverting step and the controlling step.” J.A. 570-71 (emphasis added) (quotation marks, citation, and alteration omitted).[2] And significantly, in its Final Written Decision, the Board also addressed claim 1 and claim 24 separately. See J.A. 8-9.
*989 Nor is this a situation where HTC proposes a new claim construction on appeal or where we must adopt a new construction of the method claims in order to rule in the appellant’s favor. There is no dispute here that HTC consistently argued below and on appeal that the method claims do not require a separate diverting entity. See, e.g., J.A. 571 (“The language of claim 1 does not preclude the same structure from performing the diverting step and the controlling step.”); Appellant Br. 23 (“The text of Claim 1 does not expressly or implicitly require separate structures to perform the ‘diverting’ and ‘controlling’ steps.”). Thus, this is not a situation where HTC simply waived its claim invalidity argument with respect to the method claims. Contrary to the majority, I see HTC’s consistent, separate presentation with respect to claim 1 and claim 24 and HTC’s reliance on the same argument that it had presented to the Board as sufficient to provide “fair notice to the initial tribunal and to the opposing party.” Maj. Op. 984.
This is simply a situation in which the appellant has made a single and overly broad argument — that a separate diverting unit is not required — for both the method claims and the device claims. In my view, this argument is correct as to the method claims and incorrect as to the device claims. Under these circumstances, I see no forfeiture. In similar circumstances in the past, we have held that the appellant wins in part and loses in part. See, e.g., Perricone v. Medicis Pharm. Corp., 432 F.3d 1368, 1379 (Fed. Cir. 2005) (holding that a prior-art reference anticipated claims 1-4 and 7, but not claims 8, 9, and 13, because the latter set of claims contained one fewer limitation); Ecolochem, Inc. v. S. Cal. Edison Co., 227 F.3d 1361, 1370 (Fed. Cir. 2000) (holding that a prior-art reference did not anticipate claims 1, 4, and 7-12, but that it did anticipate claim 20); Raytheon Co. v. Roper Corp., 724 F.2d 951, 957 (Fed. Cir. 1983) (holding that the argument that an additional limitation be read into claims 1, 3, and 4 was only correct with respect to claim 1, and thus, only claim 1 was invalid). And the same approach is appropriate both in district courts and in PTO proceedings. I disagree with the majority that the IPR regime somehow adopts an all-or-nothing approach that discourages such “half wins.” See Maj. Op. 984.
The Supreme Court follows a similar approach to statutory interpretation, making clear that when a party “interprets a ... statute too broadly ... or too narrowly ..., a court has an obligation to correct its error.” Abramski v. United States, — U.S. —, 134 S.Ct. 2259, 2274, 189 L.Ed.2d 262 (2014). The issue here is similar to that in Young v. United Parcel Service, Inc., — U.S. —, 135 S.Ct. 1338, 191 L.Ed.2d 279 (2015), where the petitioner asked the Court “to interpret the second clause [of the Pregnancy Discrimination Act] broadly, ... [so] that the statute grants pregnant workers a ‘most-favored-nation’ status.” Id. at 1349. According to the petitioner’s interpretation, “[a]s long as an employer provides one or two workers with an accommodation ... [,] then it must provide similar accommodations to all pregnant workers ..., irrespective of the nature of their jobs, ... their ages, or any other criteria.” Id. at 1349-50. The Court held that the petitioners’ “approach ... proves too much.” Id. at 1349. Instead, the Court adopted a narrower interpretation under which an employer needs only to accommodate pregnant workers as it “accommodate[s] others ‘similar in their ability or inability to work.’” Id. at 1354. As Young demonstrates, partial success is a routine feature of statutory interpretation. Making an *990 overbroad argument routinely leads to partial success, not complete failure.
A party asserting a patent validity challenge under a single theory similarly may lose with respect to some claims but win with respect to others. I respectfully dissent in part from the majority’s contrary approach.

. The majority acknowledges that "HTC separately addressed the language of claims 1 and 24” to our court. Maj. Op. 983.

. In contrast, with respect to claim 24, HTC argued that "D'Aviera unequivocally discloses a diverting unit ... as required by claim 24.... Isolator engine 225 ... qualifies as ... the requisite diverting unit.” J.A. 572-73 (emphasis added) (quotation marks omitted).